Our final case this morning is No. 16-2193, Preservation Wellness v. Allscripts Healthcare, Ms. Ghaly. Good morning, Your Honors. May it please the Court, I am Nicole Ghaly. I am here on behalf of the Appellant Preservation Wellness Technologies. I've requested five minutes for rebuttal. Your Honors, you seem like you want to get to the heart of the issue and I'd like to do the same. What's inventive about my client's patent? Why should we be allowed to go forward? I think this case turns on a central issue, which is whether the use of a two-way firewall in the claims of this patent is inventive, sufficient to render the claims patent eligible. I submit that the Court did not reach the right result. Obviously, that's why we're here, for the following reasons. In essence, Your Honors, when you look at the opinion, what the Court concluded was that the two-way firewall in the patent was a conventional piece of software. And here's where the real problem is, that it was being used in a conventional manner for conventional functions and purposes. And that's where the whole real heart of the dispute is at this point. First of all, a two-way firewall is a factual matter. Counselor, on the 271 patent, the limitations on the claims, to me, appear to be wholly functional. And I think that creates a problem, and I think that's what Judge Bison was focusing on. I understand that, Your Honor. We spent quite a bit of time discussing the functional nature of the claims, except that's not entirely accurate. And for the core reason that the tools that are being used, the pieces of computer equipment or programs that are being used to carry out those functions, are different than what you would normally and ordinarily find being used to carry out those particular functions. So I agree with you that there are certainly plenty of functional limitations in the claim, but the two-way firewall is— It's not enough to claim the tool. You have to show how the tool will work, or what the tool's doing. It does, Your Honor. It says that the two-way firewall is performing certain functions, and that's where I was going. What are the functions that a two-way firewall will normally perform in a system such as this? Three items. First of all, where is it located? And that is actually key to the whole inventive part of this claim. It's located usually at the perimeter of a network, and it's not located usually at the user interface, and that's another part of this. But the claims talk about the location of it. By the fact that—and they talk about it by the fact that it's the two-way firewall that is performing these functions, as opposed to saying— But it doesn't say where it's located, does it? It does—the claims themselves do not say where it's located. However, it is absolutely clear when you look at numerous points, number one, in the specification, that it's located at the server level. It's not located at the user interface level. How can we construe the claims as being limited in that way, particularly when we're applying the BRI standard? Well, Your Honor, there is no claim construction permitted in this case. We submitted a claim construction, which the court said that he adopted, which included— Can I interrupt you just for a second? Because Claim 1 says a server, which includes a two-way firewall program. So I actually think that you are factually wrong when you tell Judge Dyke that the claim doesn't say where the two-way firewall is. I apologize, Your Honor. You are correct. It does say it's on the server. That's absolutely right, and my apologies, Your Honor. It's not simply in the specification. That is absolutely accurate. I got that incorrect. So that's, in fact, correct. It is actually saying that it is on the server. And then when you look back at Figure 1, it shows that the server is not where the user interface is located. That's located on the client end. And that's what we were attempting to get at by talking about middleware. Where does the claim say where the server is located? Where does it say where the server is located, Your Honor? The claim. In the claim—let me pull that up. And I am going to be referring to Appendix 82. Well, Your Honor, if you read through it, it talks about this being a network, and it talks about that within the network there is a patient access computer device, and then separately it talks about there being a server. And that inherently implies that these are two different parts of the system, and two different locations. It doesn't tell you where it's located. Well, as I understand how computers work, Your Honor, in theory all of these things, I suppose if it were one system, could all be on one particular piece of hardware. Hold on just a minute. That could be, but what we're interested in is not our various opinions. It's what are the claims directed to. And you start off by saying that the functions are explained, or you have rules within the functions. Now, one of them is the location of the firewall. That turned out not to be correct. But you said that it's located in a different area than normally. It's in the server. I asked you, well, do the claims show where the server is located? And you said yes, but they don't. Well, Your Honor, they are distinguishing between the client interface and where the two-way firewall is located. It does not say that the patient access computer is on the server. It distinguishes that. So I do believe that it shows that they are in different parts of the system. But even if they're following up on, I believe, both of my colleagues' points, even if it's located in the server, kind of as Judge Reda suggests, that doesn't tell us precisely where it's located. What you argued to us in your brief is it's located in middleware, and that's really a critical distinction between prior uses of firewall and this use of firewall. It's located in middleware. I don't find that word in the specification. I find no evidence that this firewall is located in the middleware. It may be located in the server, but that's not good enough for you to prevail. You went much further in your briefs and said that the location is very precise. I don't see that in the claims, and it's definitely not in the claims, but I don't see it in the spec. Well, Your Honor, I think there is a disconnect here, and let me see if I can address that. I am actually saying it is correct. I'm actually saying that firewalls are normally located in the middleware and that that is where the firewall, where the middleware concept is coming from. Where I'm talking about the location difference is where the type of software that is normally performing the functions that are being called out is located. That is not firewall software normally, and that is usually user interface software, and it's located in a different place from where the firewall software is. So that is a disconnect. Middleware does not appear in the claim. Absolutely not, Your Honor. That was something that we were going to proffer expert testimony to support. Or the spec. It does not appear in the prosecution history either, Your Honor. I will absolutely grant that. Why do you argue it here before us if you know that? Because, Your Honor, we were asked to provide a claim interpretation. That claim interpretation would have been supported by expert testimony had we been allowed to have a hearing. I'm bound by what we presented to the court in good faith, and I had presented an offer of proof, in essence, that if I had been allowed to proceed, I would have presented extrinsic evidence that would have supported what one of ordinary skill in the art would have understood reading these claims, reading the specification, and the prosecution history. There are certainly clues that one of ordinary skill in the art would look at and that we did look at, such as the fact that the firewall was located on a server, that there is a distinct place within the system called a user interface, and then when you look at the prosecution history, for example, you see that Mofege is operating in the user interface, and the USPTO held that the client's invention was allowable because a two-way firewall was not, therefore, shown by what was happening with Mofege with this graphical user interface that was taking this performance. Was that to interpret the prosecution history? Not at all, Your Honor. The expert was going to provide the word middleware as being what was being defined by what was in the prosecution history. I guess the question that I'm getting at is there's nothing in the claims about it, nothing in the specification about it, nothing in the prosecution history. Why can't we, on appeal, simply say the intrinsic evidence doesn't include, suggests that the claims include a middleware limitation and a problem? And I am fine with that, actually, Your Honor. We do not need to rest upon middleware in order for this appeal to be successful because if you look solely at the specification at the claim, which I misspoke earlier, which shows that there is a distinction between the client end of the system and the server, which is where the firewall is residing, if you're looking at what this firewall is normally, what firewalls normally do, which we commonly, I don't think there was any dispute about what the firewalls normally do, which even in the opinion, the court does state that they normally block wholesale access by users, programs, and software, and data into the system, and again, wholesale access by those same types of things out of the system. That's not what's happening here. The firewall here is operating at a much more granular level. So we can, for the moment, and I'm happy for the sake of argument, to not talk about where it's located at this moment, but Chief Stephen, to focus on the functions alone, the functions that are being performed by this firewall are different than what you would normally see a firewall performing, and that alone is inventive. How so? Because again, this particular software is making determinations about an authorized user, so you already have the password system in the claim, and it's letting in an authorized user, and then it's determining what type of authorized user can see what type of information, and then particularly when you look down, for example, to claim 14, it says that another user, if you want to call them a super user, can make changes in what information that the patient user can see, and these are not functions that you would normally find a two-way firewall performing. Don't you concede below that the firewall is a conventional computer system? No, Your Honor. I know that there is talk and the opinion about concessions. What we said was it was pled in the alternative. It was argued throughout the transcript in the alternative that it may not be a conventional two-way firewall, but we are willing to say that even if it is a conventional two-way firewall, under cases such as BASCM you can have, and there are others, you can have completely conventional components. You can have a claim as they did in BASCM where every single one of the components there was conventional, but it was operating in a nonconventional manner, and that's the heart of what our argument is, that the two-way firewall here is not operating to do what two-way firewalls normally do, but to do a different set. So you did concede, and you conceded just now that it's conventional software, that a firewall is conventional, right? You're saying, but in this case it's being used in a nonconventional way. I am not conceding that point, Your Honor. I am conceding that even if this court were to hold that it were conventional, we would still win because it's not being used in a conventional manner. Can you say you're not conceding that at page 291 of the appendix? I mean, I think this is you. Are you sure? The right person? Is this you at page 291 of the appendix? Yes, Your Honor. So the court's asking you what it does in the reach of this patent, and you go through and you explain that it is a two-way firewall program, which is conventionally found, and then you go through and explain that a firewall prevents certain types of users from getting into all of the systems, and it prevents certain types of information and malware and whatnot from getting in. Two-way firewall also has a known meaning, which again, at a network level, prevents certain stuff from getting out. It could be information, yada, yada, yada. This is what you represented to the court below. This wasn't a concession. This wasn't like, okay, Your Honor, even if you conclude it's conventional. He said what does it do in the reach of this patent, and you explained it. Your Honor, again, we have stated from the very beginning in our brief that this could be used as a conventional two-way firewall. I am not prepared, nor have I been authorized, to concede that if we were allowed to proceed with the case, Your Honor, we would make a showing that it may also not be a conventional two-way firewall. I don't have that record. I'm here on a motion to dispense. Was this two-way firewall available at the time of the patent application? Your Honor, to my knowledge, because you could use a conventional, we don't disagree, you could use a conventional two-way firewall for this purpose and adapt it. Yes, I think that is one possibility. Judge Bryson stated at Appendix 19, he says, Preservation conceded at the hearing on the motion to dismiss that the two-way firewall is a conventional computer program that was available at the time of the patent application. Your Honor, again, we have never disagreed that a conventional two-way firewall, I'm not saying it's the only one that would be encompassed by the claims, but a conventional two-way firewall could be used in this claim, is being used, I should say, in this claim in an unconventional manner. And that's where I think the real heart of the argument lies. I'd like to reserve my remaining time for rebuttal. Thank you, Ms. Galley. Mr. Rao. Good morning, Your Honors. May it please the Court. I think you've heard kind of the nub of it, which is if there is a conventionally known two-way firewall and then there is potentially an unconventionally known two-way firewall, what are the differences between the two other than the stated functions that have been offered by the patentee? And when you look at the specification, there is no guidance as to how those functions that are being performed, that are identified in the claim construction provided by the patentee, how are those functions being performed and how are the differences between the two manifest in the technology? How are they implemented? What is the way in which the particular programming is done? What's the way in which the software is designed to accomplish that result? What we really have is we have merely claiming a functional result. You have a claim that's directed to the resulting system. And so what we're left with when we focus on the entire middleware issue is not only are there no mentions of the benefits of locating the two-way firewall on any given spot on the server, whether middleware or what's sometimes being called the user interface level, there's no discussion at all of either of those two locations within the patent. And if you talk about how it might compare or not compare to BASCOM, BASCOM was an invention that was directed to an unconventional way of arranging conventional components, so it's allowed the exploitation of specific technical features. In BASCOM, there were features that were identified. There was technical disclosure. There were flow charts. And then they explained the exploitation of specific technical features of the components to produce a specific technical result over the prior art. Here we don't have the exploitation of specific technical features. Some of them aren't even disclosed. And we certainly don't have an explanation as to how they're an improvement over the prior art. So from the perspective of the Applees, it's not a close call in saying that this case is distinguishable from BASCOM. Taking the arguments directed specifically to the middleware, I think the lower court had the better of the argument in regard to how to manage the middleware. The district court said the two-way firewall suffers from an added infirmity beyond just the fact that it's claimed functionally. It says it's the location of the middleware. And the court said, although that feature, its location in the middleware is nowhere found in the 271 patent, either in the claims or in the specification, preservation argues that it's an inherent feature of the two-way firewall program. Well, that's a bit of a challenge in having that be relied upon for the inventive concept. And the district court laid out the two options in the inherency argument as they saw them. They said either there's no structure, in which case it's defined purely functionally as providing tiered access to patients and physicians and adds nothing to the inventive concept, or alternatively, it does have structure, but that definition is so well known that it need not be described in a patent to be understood by a person of ordinary skill in the art. In that instance, the structure it said is simply a conventional structure that functions in a well-known manner. So in either of those two options, we're left in a position where we're unable to look to the location of the two-way firewall in the middleware as being the type of transformative piece of an inventive concept that would move it out of the abstract idea. And I'll also point to pages 32 and 33 of the blue brief where preservation furthers its argument about the special nature of the location of the two-way firewall in the middleware as opposed to at the user interface level and says that it enhances the security. Now, when you look at the teaching in the patent, the patent has a small disclosure regarding security that's on appendix 82 is the page number column 13. Lines 45 through 55 have two concepts about security mentioned. One is that the server itself is secure, and that's a well-known item from the prior art. And the second is it says that the security that would be gained by this invention would be that you wouldn't carry around your medical records on your person and that the security provided was the access over the Internet in a secure manner. So even within the patent itself, when we look outside of the claims to try to find the teachings in regards to security, they're not focused on the type of security that we're hearing about in the briefing. Further to that, to the extent the specification, you know, is talking about the benefits or not of having security, it's clearly not talking about the location. There was also reference to the Markman and whether or not that process would have changed the result. We look at the process in which the lower court decided to accept the claim construction as provided, and while we believe the construction would be inconsistent with one that would be given by a full process since the construction was picked by preservation, I don't think there could be any legitimate argument as to the content of that construction, and we believe that the construction was adopted in full by the lower court and assessed on its merits. And the process that was used below, which included a full deliberation not just of the individual elements but the combined elements of the invention, the ordered combination, we also think was fully proper. So in light of the record below being so robust on that analysis, we believe that the criticisms from preservation as to that process are misplaced. Do you have anything further? No, I'm going to relinquish the rest of my time unless you have any questions, Your Honor. I think we don't. Thank you. Thank you. Ms. Ghaly. Your Honor, I'm going to see the court of appeals. Okay, thank you. Thank both counsel. The case is submitted. That concludes our session.